616 P.2d 419

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Roger BENAVIDEZ, Sr., Defendant–Appellant.**

No. 12768.

Supreme Court of New Mexico.

Sept. 10, 1980.

William Lazar, El Rito, for defendant–appellant.

Jeff Bingaman, Atty. Gen., John G. McKenzie, Jr., Asst. Atty. Gen., Santa Fe, for plaintiff–appellee.

## OPINION

SOSA, Chief Justice.

Defendant was convicted of the first–degree murder of Michael Salazar. He was sentenced to life imprisonment. The issue we decide on appeal is whether the trial court erred in refusing to instruct on voluntary manslaughter. We hold that it did, and reverse.

The facts pertinent to this appeal follow. The defendant and his son (Benavidez, Jr.) lived together and were both acquainted with the victim (Salazar). On the afternoon of September 6, 1978, Salazar phoned Benavidez, Jr. and made threats to kill both him and defendant. Defendant may have known of the threats. Late that night, Salazar and a friend drove to the Benavidez home. Salazar was highly intoxicated. Salazar knocked on the door of the home, and according to the testimony of one witness, defendant opened the door. The witness also testified that he heard an argument, heard Salazar yell "I've got three guys too!", heard him yell "I'll take both of you on!" and then heard further arguing. Then, just before two shots were fired, the witness saw Salazar gesture with his arm. The gesture was variously characterized as a raised fist, a swing, a punch, an attempt to strike and a move for a weapon. The evidence is conflicting, and varies with who is telling the story. The defendant denies ever having shot at Salazar, claiming his son did it. The case was submitted to the jury with instructions on first–degree murder and second–degree murder. Defendant requested instructions on voluntary manslaughter but they were refused by the trial court.

The defendant argues that the trial court erred in refusing to instruct the jury on the crime of voluntary manslaughter. He contends that there was sufficient evidence to support the giving of a manslaughter instruction, and the error requires reversal.

The State argues initially that even if there was evidence of manslaughter, the failure to give an instruction was harmless and non–prejudicial. The State's argument

is based on the fact that the jury was instructed to first determine whether the defendant was guilty of first–degree murder, and only if they decided he was not, were they to proceed to lesser included offenses. N.M.U.J.I.Crim. 2.40, N.M.S.A. 1978. Since the jury here found the defendant guilty of first–degree murder, the arguments runs, the jury never would have discussed either second–degree murder or voluntary manslaughter. Thus the lack of a manslaughter instruction, even if warranted, was harmless.

 It is basic that a defendant is entitled to have his theory of the case submitted to the jury under proper instructions where the evidence supports it. *State v. Ortega*, 77 N.M. 7, 419 P.2d 219 (1966); *State v. Ulibarri*, 67 N.M. 336, 355 P.2d 275 (1960); *State v. Diaz*, 36 N.M. 284, 13 P.2d 883 (1932). We cannot conclude that it was harmless error not to give an instruction which is supported by evidence. *See Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). Even though the jury is instructed to consider first–degree murder and make a determination before moving on to any lesser offenses, the jury is also instructed on each of the crimes charged, and the elements of each, before deliberation ever begins. N.M.U.J.I.Crim. 2.40. The jury therefore knows what their choices are before they deliberate. Here, assuming there was evidence of provocation, the jury was not given the choice of finding that the defendant committed voluntary manslaughter. To argue that a finding by the jury that the defendant acted with deliberate intention precludes any possibility that they could have found sufficient provocation begs the question. The jury was simply not given the choice. We do not consider this to be harmless and non–prejudicial where the evidence would support such a choice by the jury.

 The State secondly argues that the evidence in this case did not support the giving of a manslaughter instruction. The question which we must decide at this point is how much evidence is necessary before an elements instruction on voluntary manslaughter will be required. The State would have us use the standard that an elements instruction on voluntary manslaughter should be given when there is sufficient evidence to sustain a conviction on the charge. *State v. Lopez*, 79 N.M. 282, 442 P.2d 594 (1968); *State v. Ulibarri, supra*. This seems to us to be the most reasonable standard. If any lower standard were adopted, and a defendant was convicted under an instruction given without sufficient evidence to sustain a conviction, we would be in a position of having to discharge the defendant. *See Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976).

 We now reach the basic issue of whether there was sufficient evidence in the instant case to sustain a conviction for voluntary manslaughter. A conviction for voluntary manslaughter requires that there be sufficient provocation "such as would affect the ability to reason and cause a temporary loss of self control in an ordinary person of average disposition. The provocation must be such that an ordinary person would not have cooled off before acting." N.M.U.J.I.Crim. 2.20, N.M.S.A.1978. We believe that the evidence would sustain a conviction of voluntary manslaughter. There is evidence that Salazar had at one time stolen a television belonging to defendant, that Salazar had introduced defendant's son to the use of heroin, that he had assaulted defendant's son in the past, that he had threatened both defendant and his son with death, that he was arguing with defendant at the time of the killing, and that he made some type of motion which could have been an attempt to strike or a move for a weapon. This evidence of provocation is clearly sufficient to sustain a conviction of manslaughter.

We hold the trial court's error in refusing to give the jury a manslaughter instruction was prejudicial to the defendant, and the conviction must be reversed.

For the foregoing reasons this case is reversed and remanded to the trial court for a new trial.

EASLEY and FEDERICI, JJ., concur.