908 P.2d 258

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Sergio Castillo DIAZ, Defendant–**
**Appellant.**

No. 15825.

Court of Appeals of New Mexico.

Oct. 30, 1995.

Certiorari Denied Dec. 11, 1995.

ing an officer. *See* NMSA 1978, § 30–22–1 (Repl.Pamp.1994). Accordingly, we remand for a new trial.

2. Defendant also raises three issues relating to jury instructions on the elements of the crime of aggravated assault on a peace officer, five issues alleging error in the trial court's restricting Defendant in his ability to present evidence or cross-examine witnesses due to his failure to abide by discovery deadlines or due to time constraints, and a claim of cumulative error. In light of our reversal and remand for a new trial, we need not address any of these issues. Nor do we believe that any of the issues will be raised in the same way on retrial; thus, we do not address them for the purpose of guidance on retrial.

*FACTS*

3. On May 31, 1992, Defendant had been drinking and left his home on foot to go to a friend's house. Defendant's wife ("Wife") and daughters came looking for Defendant in the family's Ford Bronco. When Wife was unable to find Defendant at the friend's house, she returned to the Bronco. Defendant was there. He was intoxicated and very angry that she had been looking for him. He was breaking the Bronco's windows. Defendant began yelling at Wife. Wife asked a passing motorist to call the police. The motorist notified Officer James Lujan, who was a few blocks away on another call.

4. When Lujan arrived, he saw Defendant near the Bronco holding a knife and yelling at his Wife. Lujan drew his gun, approached Defendant, and ordered him to drop the weapon. Defendant did not obey the order, and he instead backed away, still holding the knife.

5. Officers David Webb, Jesse Bransford, Sandra Gomez, and Martin Lopez arrived next. Webb and Lopez drew their weapons and joined Lujan. These three officers formed a semi-circle around Defendant. Gomez and Bransford stayed behind the officers and put away their weapons. The officers testified that they repeatedly ordered Defendant to "put down," "drop," or "throw" the knife. Defendant did not put the knife down,

Tom Udall, Attorney General, Gail MacQuesten, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Sammy J. Quintana, Chief Public Defender, Christopher Bulman, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

*OPINION*

PICKARD, Judge.

1. Defendant appeals his conviction of four counts of aggravated assault on a peace officer in violation of NMSA 1978, Section 30–22–22(A)(1) (Repl.Pamp.1994). Defendant raises ten issues on appeal. Our review of the record indicates that the trial court erred in failing to instruct the jury on the lesser included offense of resisting or abus-

but instead continued to back down the street, followed by the officers.

6.   Defendant and the array of officers continued down the street for approximately 150 to 200 yards.   Officer Ignacio Salazar drove up behind Defendant and parked his car to block Defendant's path.   Defendant stepped up onto the sidewalk and stopped. By this time, the officers had moved to within a few feet of Defendant.   Salazar joined the other officers in the semi-circle around Defendant.   Defendant had essentially been "cornered" between some trees behind the sidewalk, Salazar's vehicle, and the officers.

7.   The officers testified that Defendant at this point made a move toward them.   Salazar fired one shot.   Defendant was struck, dropped the knife, and fell to the ground.

## LESSER INCLUDED OFFENSE

■   8.   A failure to instruct the jury on a lesser included offense constitutes reversible error if: (1) the lesser offense is included in the greater, charged offense, *State v. Wingate,* 87 N.M. 397, 397–98, 534 P.2d 776, 776–77 (Ct.App.1975); (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed, *State v. Fish,* 102 N.M. 775, 779, 701 P.2d 374, 378 (Ct.App.), *cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985); and (3) the defendant has tendered appropriate instructions preserving the issue, SCRA 1986, 5–608(D) (Repl.1992).   We discuss each of these requirements as well as a fourth issue—the trial judge's stated reason for refusing Defendant's request.   We discuss preservation last.

### Resisting as offense included in peace officer assault

9.   We first analyze whether the instructions sought by Defendant were for a lesser offense included in the greater charged offense.   *See Wingate,* 87 N.M. at 397–98, 534 P.2d at 776–77.   Defendant was charged with aggravated assault on a peace officer in violation of Section 30–22–22(A)(1) ("Aggravated assault upon a peace officer consists of ... unlawfully assaulting or striking at a peace officer with a deadly weapon while he is in the lawful discharge of his duties.")   The

jury was instructed that, to find Defendant guilty, it had to find that:

1.   The Defendant used a knife in a menacing or threatening manner ... [which] caused [the officer] to believe that he was about to be hurt or injured; and a reasonable person in the same circumstances would have had the same belief.

2.   The Defendant used a knife.

3.   At the time [the officer] was a Santa Fe City Police Officer and was performing his duties.

10.   Defendant argues that the versions of resisting upon which the jury should have been instructed are Sections 30–22–1(B) ("[r]esisting, evading or obstructing an officer consists of ... intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act ... has knowledge that the officer is attempting to apprehend or arrest him") or 30–22–1(D) ("[r]esisting, evading or obstructing an officer consists of ... resisting or abusing any ... peace officer in the lawful discharge of his duties").   There is a uniform jury instruction for both of these versions of resisting providing that the State needs to prove:

1.   [name of victim] was a peace officer in the lawful discharge of his duties; and [either]

2.   The defendant, with the knowledge that [name of victim] was attempting to apprehend or arrest him, fled, attempted to evade or evaded the officer; [OR]

2.   The defendant resisted or abused [name of victim].

SCRA 1986, 14–2215.

■   11.   Our first inquiry is whether either or both of these ways of resisting is a lesser or necessarily included offense of aggravated·assault on a peace officer.   In general, a crime is a lesser included offense of another when the defendant could not have committed the greater offense without also committing the lesser offense.   *State v. McGuire,* 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990).   In New Mexico, there are at least two tests for whether an offense is necessarily included within another offense.

Our Supreme Court's latest case on the issue appears to limit lesser included offenses to those that satisfy a strict elements test so that a lesser offense cannot have any element not included in the greater and must have at least some elements of the greater. *State v. Henderson*, 116 N.M. 537, 541, 865 P.2d 1181, 1185 (1993). In the past, however, our Supreme Court has approved of a test that is not as strict and that views the elements in light of the facts proved at trial so that a lesser offense can have elements, in the abstract, that are not included in the greater, but that the method of committing the greater crime in the particular case will necessarily include commission of the lesser crime. *State v. DeMary*, 99 N.M. 177, 179, 655 P.2d 1021, 1023 (1982).

12. Resisting in violation of Section 30–22–1(D) is a lesser included offense of aggravated assault on a peace officer under the *Henderson* test, while resisting in violation of Section 30–22–1(B) is not. However, under the facts of this case, resisting in violation of Section 30–22–1(B) is a lesser included offense under the *DeMary* test. We explain.

13. Insofar as Section 30–22–1(D) is concerned, we addressed a similar situation in *State v. Padilla*, 101 N.M. 78, 678 P.2d 706 (Ct.App.1983), *rev'd on other grounds*, 101 N.M. 58, 678 P.2d 686 (1984), *aff'd sub nom. Fugate v. New Mexico*, 470 U.S. 904, 105 S.Ct. 1858, 84 L.Ed.2d 777 (1985). In that case, we held that resisting an arrest, within the contemplation of Section 30–22–1(D), is a lesser included offense of battery on a peace officer as defined by Section 30–22–24. *Id.* at 80, 678 P.2d at 708. A violation of Section 30–22–1(D) occurs when a defendant resists or abuses an officer who is performing his duties. *Id.* at 80, 678 P.2d at 708. If an officer is engaged in the performance of his duties and the defendant applies a touching or application of force in a rude, insolent, or angry manner, then this is a battery in violation of Section 30–22–24. *Id.* at 80, 678 P.2d at 708. Since a defendant cannot resist or abuse an officer without being rude, insolent, or angry, the difference between Section 30–22–24 and Section 30–22–1(D) is that a violation of the former culminates in an offensive

touching while a violation of the latter does not. *Id.* at 80, 678 P.2d at 708. Thus, a defendant cannot commit peace officer battery without having also resisted or abused an officer.

14. The case at bar is subject to a similar analysis. Cases charging a violation of Section 30–22–22(A)(1) require the jury to find that an officer was engaged in the performance of his duties when he was assaulted by a defendant with a deadly weapon. An assault with a deadly weapon cannot occur if resistance or abuse is not also present. Anyone who commits aggravated assault in violation of 30–22–22(A)(1) also commits resisting in violation of 30–22–1(D). The latter is therefore a lesser included offense under the strict elements test of *Henderson*.

15. Under the strict elements test, however, resisting in violation of Section 30–22–1(B) is not a lesser included offense. Defendants can unlawfully assault or strike an officer with a deadly weapon without knowing that the officer is trying to apprehend them and without fleeing, trying to evade, or actually evading the officer. However, under the facts of this case, the State concedes that resisting in violation of Section 30–22–1(B) would be a lesser included offense of aggravated assault because "[i]n assaulting the officers with the knife, [Defendant] was also attempting to evade arrest."

*Evidence to support the lesser offense*

16. The next question that must be addressed is whether there was evidence tending to establish the lesser included offense that also indicates that the lesser offense is the highest degree of crime committed. *See Fish*, 102 N.M. at 779, 701 P.2d at 378. Our review of the testimony indicates that if the jury disbelieved the State's evidence and found Defendant's version of events credible, it could have found that Defendant was at most resisting and abusing the officers, but not assaulting them with the knife. *Compare State v. Aguilar*, 117 N.M. 501, 506, 873 P.2d 247, 252 (although second degree murder is a lesser included offense of first degree murder, the evidence in this case did not support a finding of second degree murder) (1994), *cert. denied*, —— U.S. ——,

115 S.Ct. 168, 130 L.Ed.2d 105 (1994); *State v. Wilson*, 117 N.M. 11, 14–15, 868 P.2d 656, 659–60 (Ct.App.1993) (trial court was entitled to refuse the defendant's instruction on CSP III as a lesser included offense of CSP II if there was no view of the evidence tending to establish CSP III as the highest degree of the crime committed), *cert. quashed*, 119 N.M. 311, 889 P.2d 1233 (1995).

17. If the jury were persuaded by the testimony indicating that Defendant was intoxicated and defiant of the police, but he did not intend to threaten the police with the knife, or the police were not reasonably in fear of Defendant, the jury could have concluded that the highest degree of offense committed by Defendant was "resisting or abusing" the officers in violation of Section 30–22–1(D). Similarly, the evidence that Defendant was backing away from the officers and that his "forward" movement was simply unsteadiness rather than a lunge at the officers would have supported a finding that Defendant was only attempting to evade arrest in violation of Section 30–22–1(B). As our analysis of the conflicting accounts shows, there was sufficient evidence that Defendant was resisting without assaulting the officers to support a conviction on resisting.

18. The officers and witnesses all testified that Defendant continually backed up, away from the officers, who followed him down the street with guns drawn. Defendant moved down the street away from the officers until his path was blocked by Salazar's vehicle. If the jury believed this testimony, it could support Defendant's theory that he was only resisting officers, and not menacing or threatening them.

19. There was conflicting testimony as to whether Defendant was saying to the officers: "Get back.... Go away," or "Fuck you.... You want the knife.... Come on." The testimony also conflicted regarding whether Defendant pointed the knife at the officers or merely held the knife. If the jury believed the testimony that Defendant challenged and directed profanity at the officers while holding a weapon, but did not actively threaten or menace them, then Defendant could have been found guilty of resisting by abusing the officers. If Defendant continual-

ly stated, "Go away.... Get away," then this is consistent with Defendant's position that he was resisting the officers in the discharge of their duties.

20. The alleged movement which led to Defendant being shot was characterized differently by the witness. Some testified that Defendant made a "forward motion," "step," or "lunge" toward the officers. Some witnesses testified that they never saw Defendant move toward the officers at any time during the altercation. Other witnesses testified that Defendant, who was indisputably intoxicated, was unsteady on his feet. The testimony that Defendant never moved or was unsteady as he was confronted by the officers, if believed, is consistent with Defendant's theory that he was resisting the officers but was not threatening them.

21. The officers' conduct in approaching and drawing closer to the armed Defendant could contradict the officers' testimony that they felt threatened. The number of officers in the array, the fact that the four officers closest to Defendant had their weapons drawn and pointed at Defendant, and the testimony that the officers came well within the "danger zone" (as described by the State's expert) suggests that the officers may not have been credible when they testified that they were "afraid" of Defendant.

22. The testimony of the State's expert raises questions regarding whether reasonable people who were in fear would get within one to two feet of a man who was threatening them with a knife. Once four officers were arranged in a semi-circle around Defendant and had him backed against the trees, he could not progress further. The jury could have reasonably concluded that the officers had no reason to fear Defendant and that Defendant did not pose a threat to the officers.

23. There was thus sufficient evidence that resisting in violation of either Section 30–22–1–(B) or Section 30–22–1(D) was the highest degree of crime committed.

*Trial court's rationale*

24. The trial court apparently determined that if the jury accepted Defen-

dant's theories on any of the elements of aggravated battery, it would acquit him; thus he would not be prejudiced by a failure to instruct on a lesser offense. This rationale is an incorrect view of the type of prejudice that must be shown for a defendant to prevail on this issue. Defendants are entitled to have their theory of the case submitted to the jury under proper instructions where the evidence supports it. *State v. Benavidez*, 94 N.M. 706, 708, 616 P.2d 419, 421 (1980). Failure to give an instruction which is supported by the evidence is not harmless error. *Id.* A court's failure to give a lesser included offense instruction when requested and supported by evidence is reversible error. *See State v. Corneau*, 109 N.M. 81, 88, 781 P.2d 1159, 1166 (Ct.App.), *certs. denied*, 108 N.M. 668, 777 P.2d 907 (1989).

25. In this case, if the jurors disbelieved the State's theory and found the defense theory credible, they were left with a dilemma. Defendant's own witnesses testified that he resisted the officers. He backed away. He refused to drop the knife when told to do so. He told the officers to "go away" and may have used profanity. Defendant thereby conceded some wrongful behavior. Without an instruction allowing conviction on a lesser offense, the jury may have felt compelled to find Defendant guilty of the greater crime rather than letting him escape all consequences of his wrongful acts. *See Benavidez*, 94 N.M. at 708, 616 P.2d at 421 (the jury knows their choices before deliberating and should be given a choice where the evidence supports it). Our review of the evidence therefore persuades us that the failure to give the requested instruction prejudiced Defendant. Defendant's witnesses did not deny that Defendant was intoxicated, belligerent, and verbally abusive or defiant of the police. Under the circumstances, Defendant was entitled to have the lesser included offense submitted to the jury as an alternative theory of Defendant's criminal liability, consistent with the evidence presented.

*Tender of correct instructions*

26. Defendant's proposed jury instruction Number 12 was tendered as UJI 14–6002, and read:

If you should have a reasonable doubt as to whether the defendant committed the crime of assault on a peace officer, you must proceed to determine whether the defendant committed the included offense of resisting arrest.

Resisting, evading or obstructing an officer consists of intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend and arrest him.

SCRA 1986, 14–6002; Section 30–22–1(B). Defendant introduced his argument for the giving of this instruction with a recitation of the facts supporting evading arrest. The prosecutor pointed out to Defendant that the correct jury instruction for resisting arrest is UJI 14–2215. Defendant indicated he was offering "resisting" as a lesser included offense and offered to provide the court with the uniform instruction.

27. In her ruling refusing Defendant's tendered jury instruction for the lesser included offense, the trial court judge stated:

Under the annotations to 6002, it indicates in the *State v. Gallegos* case [92 N.M. 370, 588 P.2d 1045 (1978) ] that the failure to give the instruction is not error absent ... prejudice to the defendant. They have to find the elements as charged, and if they don't find those, they acquit.

Is it the State's position, still, that this is not a lesser included offense of aggravated assault?

[answered in the affirmative]

Defendant's proposed instruction number 12 is refused.

28. Based on this colloquy and Defendant's tender of an instruction that appeared to only cover Section 30–22–1(B), the State argues that Defendant did not preserve any issue under Section 30–22–1(D). We disagree.

29. In *Gallegos v. State*, 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992), our Supreme Court held that an instruction issue had been properly preserved by tender of a uniform jury instruction although the specifically tendered instruction was incorrect. In

**34**

*State v. Reed,* 62 N.M. 147, 150, 306 P.2d 640, 642 (1957), the Court held that an oral request, although not technically complying with the rule requiring written tender of instructions, was sufficient to alert the mind of the trial court to the error about to be committed. Under the facts of this case, we believe that Defendant's failure to tender in writing what he offered orally, when combined with the trial court's rationale for refusing to instruct on the lesser offense and the State's rationale for urging such refusal, is not sufficient to hold an otherwise meritorious issue not preserved.

30. The trial court's rationale was that there is no prejudice in failing to give lesser included offense instructions because, if the jury does not find the elements of the greater offense, it will acquit. As we have held, this rationale was incorrect. The State's rationale was that resisting is not a lesser included offense of peace officer assault. As we have also held, this rationale was incorrect. Defendant's tender of a proper, written instruction based on both versions of UJI 14–2215 would not have alerted the trial court to its error any more than the colloquy that took place below and would not have resulted in avoidance of the error because the error was based on incorrect rationales having nothing to do with the tender of written instructions. Under these circumstances, we hold that the issue was properly preserved and the trial court should have instructed the jury on the lesser included offense of resisting.

*CONCLUSION*

31. Defendant's convictions are reversed and remanded for a new trial.

32. IT IS SO ORDERED.

DONNELLY and BUSTAMANTE, JJ., concur.